# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

AMANDA S. DOUGMAN,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:16-cv-1033
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's application for supplemental security income (SSI). This matter is before the Court on

plaintiff's Statement of Errors (Doc. 9), the Commissioner's Response in Opposition (Doc. 13),

and plaintiff's reply (Doc. 14).

## I. Procedural Background

Plaintiff protectively filed her application for SSI in April 2013, alleging disability since

May 1, 2000 due to diabetes, high blood pressure, cholesterol, heart condition, hip/pins in hip,

goiter, depression, bipolar, suicidal, dyslexic, acid reflux, and bad eye sight. (Tr. 172).

Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel,

requested and was granted a *de novo* hearing before administrative law judge (ALJ) William

Leland, which was held via video. Plaintiff and a vocational expert (VE) appeared and testified

at the ALJ hearing. On September 16, 2015, the ALJ issued a decision denying plaintiff's SSI

application. Plaintiff's request for review by the Appeals Council was denied, making the

decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th

Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since April 5, 2013, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: Diabetes Mellitus; Obesity; Depression; Bi-Polar Disorder; and History of Polysubstance Abuse (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the [plaintiff] has the following additional limitations: The [plaintiff] can occasionally lift/carry 25lbs and frequently 20lbs. The [plaintiff] can sit 6 out of 8 hours and stand/walk 6 out of 8 hours. The [plaintiff] can push/pull 25 pounds occasionally and 20 pounds frequently. The [plaintiff] can never climb ladders, ropes, scaffolding, but can frequently climb ramps and stairs. The [plaintiff] can also frequently balance, stoop, kneel, crouch, and crawl. The plaintiff can never be around unprotected heights and moving mechanical parts or operate a motor vehicle. The [plaintiff] is limited to performing simple, routine and repetitive tasks, but not at a production rate pace (e.g. assembly line work). The [plaintiff] is limited to simple work-related decisions in using her judgment and dealing with changes in the work setting; and can frequently interact with supervisors, coworkers, and the public.
>
> 5. The [plaintiff] has no past relevant work (20 CFR 416.965).

3

6. The [plaintiff] was born [in] . . . 1975 and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[1]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since April 5, 2013, the date the application was filed (20 CFR 416.920(g)).

(Tr. 15-27).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

---

[1]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as cleaner (500,000 jobs nationally), packer (400,000 jobs nationally), and inspection worker (250,000 jobs nationally). (Tr. 27, 61-63).

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff raises the following assignments of error: (1) the ALJ improperly weighed the medical opinion evidence related to plaintiff's mental limitations; and (2) the ALJ improperly evaluated plaintiff's credibility. (Docs. 9, 14).

**1. Weight to the mental health sources' medical opinions**

Plaintiff argues that the ALJ erred by failing to weigh the opinions of the mental health sources of record in accordance with the governing Social Security regulations. Plaintiff alleges that the ALJ erroneously gave less weight to the opinion of plaintiff's treating psychiatrist, Dr. Kode Murthy, M.D., than he gave to the opinions of the examining and nonexamining mental health sources.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 416.927(c)(2)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the

opinion is with the record as a whole, and other factors which tend to support or contradict the

opinion. 20 C.F.R. § 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always

give good reasons in [the] notice of determination or decision for the weight [given a] treating

source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544

(ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion).

Those reasons must be "supported by the evidence in the case record, and must be sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR

96-2p, 1996 WL 374188 at *5 (1996)). This procedural requirement "ensures that the ALJ

applies the treating physician rule and permits meaningful review of the ALJ's application of the

rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

When the ALJ does not give a treating source opinion controlling weight, the ALJ will

generally give more weight to the opinion of a source who has examined the claimant than to the

opinion of a source who has not examined the claimant. 20 C.F.R. § 416.927(c)(2); *Ealy v.

Comm'r of Social Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). The ALJ weighs any medical

opinions by examining and non-examining sources based on the physician's examining

relationship (or lack thereof), specialization, consistency, supportability of the opinion, and other

factors "which tend to support or contradict the opinion." 20 C.F.R. § 416.927(c). *See also* SSR

96-6p.

In his written decision, the ALJ gave "little" weight to Dr. Murthy's opinion that

plaintiff had "minimal ability to deal with work stresses, function independently, maintain

attention and concentration, and persist at a work-like task; moderate ability to understand, remember, and carry out simple job instructions; and minimal ability 'to behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability." (Tr. 25, citing Tr. 768). The ALJ acknowledged that Dr. Murthy was the treating psychiatrist but gave Dr. Murthy's opinion reduced weight on the following grounds: (1) plaintiff had only 12 office visits with plaintiff which involved primarily medication management; (2) the opinion was not supported by the other evidence in the record, including plaintiff's treatment history, her mental status examinations, and the reports of the two consultative examining mental health providers, Mr. Dale Seibert, M.S. Ed., and Dr. Vonderhaar; and (3) the opinion was internally inconsistent with Dr. Murthy's mental status examination findings. (Tr. 25).

Plaintiff alleges that the ALJ erred by initially failing to consider whether the opinion of her treating psychiatrist, Dr. Murthy, was entitled to "controlling weight." Plaintiff argues that the ALJ did not consider the first prong of the controlling weight standard: whether Dr. Murthy's opinion was supported by medically acceptable diagnostic techniques and clinical findings. Plaintiff suggests this prong is satisfied because Dr. Murthy followed commonly accepted psychiatric diagnostic and treatment practices when treating plaintiff and rendering his opinion. Plaintiff also argues that the ALJ did not consider the second prong of the controlling weight standard: whether the treating physician's opinion is inconsistent with other substantial evidence in the record. Plaintiff alleges that the "most salient" evidence in the record other than Dr. Murthy's opinion is the assessment of the consultative examining psychologist, Dr. William Vonderhaar, Ph.D., which plaintiff contends is consistent with Dr. Murthy's assessment.

Plaintiff is correct that the ALJ did not specifically mention the concept of "controlling weight" when analyzing Dr. Murthy's opinion. Nor did the ALJ explicitly state he declined to give Dr. Murthy's opinion "controlling weight." Nevertheless, the ALJ's decision provides the requisite analysis of the controlling weight factors to enable this Court to meaningfully review the ALJ's decision.

First, the ALJ's decision shows that he implicitly considered whether Dr. Murthy's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.927(c)(2). The ALJ determined that Dr. Murthy's assessment was "internally inconsistent with the claimant's mental status examination as described by Dr. Murthy himself" on the first page of Dr. Murthy's opinion and inconsistent with the other mental status examinations in Dr. Murthy's records. (Tr. 25).

The ALJ reasonably determined that Dr. Murthy's assessment was not supported by the treating psychiatrist's own clinical findings. (Tr. 25, citing Tr. 767). Plaintiff suggests that because mental impairments generally cannot be substantiated by objective testing to the same extent as other medical impairments, the ALJ was bound to find that Dr. Murthy's assessment was supported by medically acceptable diagnostic techniques and clinical findings simply because Dr. Murthy followed commonly accepted psychiatric diagnostic and treatment practices. Plaintiff's argument is not consistent with the governing regulations. In the psychiatric context, objective medical evidence consists of laboratory findings and medical signs, 20 C.F.R. § 416.912(b), which are defined under 20 C.F.R. § 416.928(b) as "psychological abnormalities which can be observed, apart from your statements (symptoms)"

and which "must be shown by medically acceptable clinical diagnostic techniques."[2] *Parr v.*

*Colvin*, No. 1:13-cv-31, 2014 WL 301043, at *6, n.1 (S.D. Ohio Jan. 28, 2014) (Report and

Recommendation), *adopted sub nom. Parr v. Comm'r of Soc. Sec.*, 2014 WL 656774 (S.D.

Ohio Feb. 19, 2014). "[S]igns are medically demonstrable phenomena that indicate specific

psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory,

orientation, development, or perception," which must "be shown by observable facts that can

be medically described and evaluated." 20 C.F.R. § 416.928(b); *Parr*, 2014 WL 301043, at *6,

n.1. Laboratory findings include "psychological phenomena which can be shown by the use of

medically acceptable laboratory diagnostic techniques," such as psychological tests. 20 C.F.R.

§ 416.928(c). "When mental illness is the basis of a disability claim, clinical and laboratory

data may consist of the diagnosis and observations of professionals trained in the field of

psychopathology," whose findings should not be rejected simply because of the "relative

imprecision of the psychiatric methodology." *Parr*, 2014 WL 301043, at *6. Thus, in *Parr*,

treatment notes which included clinical findings such as "labile mood, mood swings, panicked

mood, psychomotor retardation, decreased appetite, poor sleep, poor concentration, tearful,

anxiety, [and] agoraphobia," and which showed that the plaintiff's medications were often

changed in an effort to make them more effective, were found to provide ample objective

evidence and clinical findings related to the plaintiff's mental impairments. *Id.* (citing

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)).

---

[2] Sections 416.912(b) and 416.928(b) were modified effective March 17, 2017. The prior regulations were in effect when the ALJ issued his decision in this case and apply here.

In contrast, Dr. Murthy's assessment does not include signs and laboratory findings that support his assessment of plaintiff's minimal mental functioning. Dr. Murthy noted on mental status examination that plaintiff had "fair" insight into her condition and he also noted "agitation" in the category of psychomotor activity, but he reported that plaintiff was well-groomed and cooperative, her speech was normal, her thought process was logical/coherent, and her cognition, attention, concentration and memory were all intact. (Tr. 767). He assigned plaintiff a GAF score of 55, which he noted was indicative of "severe symptoms," but the score is actually reflective of "moderate symptoms (e.g., flat affect circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Revision 2000), p. 34 (DSM-IV-TR); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006).[3] Yet, despite these largely normal findings, Dr. Murthy assessed debilitating functional limitations. (Tr. 767-68). Plaintiff has not pointed to any other objective findings made by Dr. Murthy that support his assessment of debilitating psychological limitations. Over the course of plaintiff's 12 office visits, Dr. Murthy made only one abnormal mental status examination finding, reporting in July 2014 that plaintiff had "fair" concentration. (Tr. 688). Thus, the ALJ reasonably determined that Dr. Murthy's assessment was not well-supported by the objective findings in his assessment or in his treatment notes. (Tr. 25, citing Tr. 767).

---

[3] The GAF score is taken from the GAF scale, which addresses only "psychological, social, and occupational functioning" and ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death)." *Id.* at 34.

Second, the ALJ considered the controlling weight factor of whether Dr. Murthy's opinion was "not inconsistent with the other substantial evidence" of record. 20 C.F.R. § 416.927(c)(2). The ALJ specifically examined whether Dr. Murthy's opinion was consistent with plaintiff's treatment history and the examination findings of the consultative mental health sources.

The ALJ reasonably determined that Dr. Murthy's opinion was not consistent with the other evidence in the record, including plaintiff's treatment history. (Tr. 25). The ALJ found that plaintiff had sought and received only sporadic treatment for her allegedly disabling mental impairments and she did not begin regular mental health treatment until May 2014, 14 years after her alleged disability onset date. (Tr. 21, citing Tr. 440, 676-90). The ALJ noted that plaintiff had not taken medication for prolonged periods, including an eight-year period from 2000-2008 (Tr. 228); she did not seek counseling until March 2013 and did not follow through on a recommendation for individual therapy after completing an intake form at LifePoint Solutions (Tr. 326-47); and Dr. Vonderhaar reported in June 2013 that plaintiff had no "formal psychiatric history" and had never been hospitalized for "nerves or depression," even though she reported having been depressed for many years (Tr. 427). (Tr. 21).

The ALJ also found that Dr. Murthy's opinion was not consistent with the reports of consultative examining mental health sources Mr. Dale Seibert, M.S. Ed., whose assessment the ALJ gave "some weight,"[4] and Dr. Vonderhaar, whose opinion the ALJ gave "great weight."

---

[4] Mr. Seifert opined that plaintiff had mild limitations in her ability to relate to others, including coworkers and supervisors; mild limitations in her ability to understand and follow instructions; mild limitations in her ability to maintain attention to perform simple, repetitive tasks; moderate limitations in her ability to withstand the stress and pressures associated with day-today work activity due to her depression; and she could manage funds in her best interest. (Tr. 219). The ALJ found that later evidence showed plaintiff was more limited than Mr. Seifert's

(Tr. 25). Plaintiff argues that the ALJ erred by discounting Dr. Murthy's opinion on this ground because Dr. Vonderhaar's conclusions as to plaintiff's mental ability to maintain attention, concentration, persistence and pace to perform routine tasks and to withstand the stress and pressure of day-to-day work activity were similar to and not inconsistent with those reached by Dr. Murthy. The Court disagrees. The ALJ credited Dr. Vonderhaar's assessment that plaintiff's ability to relate to others, including fellow workers and supervisors, may be negatively influenced due to current signs of worry and concern over her personal and family issues and her current pregnancy, but she could possibly work cooperatively with supervisors and coworkers if she were not currently pregnant and using an insulin pump on a regular basis; her mental ability to understand, remember and follow instructions did not appear to be negatively influenced and she would be able to understand, remember and follow simple work-related and non-work-related instructions; her mental ability to maintain attention and concentration to perform routine tasks may be negatively influenced and her mental ability to maintain persistence and pace to perform routine tasks may be more negatively influenced; and her mental ability to withstand the stress and pressures associated with day-to-day work activity may be mildly negatively influenced. (Tr. 24, citing Tr. 430). In contrast to Dr. Vonderhaar's assessment of *possible* or *no* limitations, Dr. Murthy assessed plaintiff with (1) *minimal* ability "to behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability," (2) *minimal* ability to maintain attention and concentration and persist at a work-like tasks, (3) *minimal* ability to deal with work stresses, and (4) moderate ability to understand, remember and carry out simple instructions. (Tr. 768). The ALJ reasonably found these assessments are not

---

assessment indicated. (Tr. 24, citing Tr. 219).

consistent with each other. Plaintiff has not pointed to other medical evidence in the record that is consistent with Dr. Murthy's assessment of minimal ability to perform work-related functions.

Thus, the ALJ found that Dr. Murthy's assessment was not supported by the treating psychiatrist's own findings and was inconsistent with the other medical evidence of record, and those findings are substantially supported by the record. The ALJ therefore did not err by declining to give Dr. Murthy's opinion controlling weight. *See Gayheart*, 710 F.3d 376; 20 C.F.R. § 416.927(c).

Further, the ALJ gave "good reasons" for affording Dr. Murthy's opinion "little" weight, and those reasons are likewise substantially supported by the evidence of record. (Tr. 25). The ALJ considered the nature of the treatment plaintiff received for her mental impairments and the frequency of the treatment. *See* 20 C.F.R. § 416.927(c)(2)(i)-(ii). The ALJ found that although Dr. Murthy was plaintiff's treating psychiatrist, he had seen plaintiff "a mere" 12 times. (Tr. 25). While this appears to be a significant number of office visits, the ALJ took into account the fact that the office visits primarily involved medication management and no psychotherapy or counseling.[5] (*Id.*).

The ALJ further considered how well-supported by the evidence Dr. Murthy's opinion was. The ALJ found that Dr. Murthy's assessment of "minimal" to "moderate" abilities to make occupational, performance and work adjustments was inconsistent with the mental status examination findings Dr. Murthy included in his assessment. (*Id.*, citing Tr. 767; *see* Tr. 768). Plaintiff has not pointed to any findings by Dr. Murthy that show the ALJ's finding is not

---

[5] Although Dr. Murthy checked a box on his treatment notes to indicate psychotherapy was provided during plaintiff's office visits, plaintiff testified that Dr. Murthy did not discuss her problems with her and did not provide therapy when he saw her. (Tr. 54).

substantially supported. Plaintiff alleges that Dr. Murthy reported observed symptoms of "depressed mood" and "labile affect" in his assessment, but it is not clear from Dr. Murthy's largely illegible handwritten notes if he actually reported these symptoms. Assuming Dr. Murthy did report these symptoms, the ALJ nonetheless reasonably determined that Dr. Murthy's assessment is not supported by the findings included in the assessment. Dr. Murthy reported mental status examination findings of "fair" insight into her illness and psychomotor activity "agitation," but he also found that her cognition, attention, concentration and memory were "intact," her thought process was logical/coherent, and her speech was normal. (Tr. 767). Further, Dr. Murthy reported "fair" concentration in June 2014 (Tr. 688), but he made no other abnormal mental status examination findings over the course of plaintiff's 12 office visits. (Tr. 676-90).

The ALJ also reasonably determined that Dr. Murthy's opinion was not consistent with the other evidence in the record as a whole. *See* 20 C.F.R. § 416.927(c)(4). The ALJ relied on inconsistencies between Dr. Murthy's opinion and the assessments of the consultative examining providers, particularly Dr. Vonderhaar; plaintiff's sporadic treatment history; and the GAF scores assessed by all mental health providers of record, which showed "no more than mild to moderate limitations" (Tr. 219- consultative examiner Mr. Seifert assigned a GAF score of 65 in December 2008; Tr. 346- licensed social worker at LifePoint Solutions assigned a GAF score of 55 in March 2013 following self-cutting incident; Tr. 431- Dr. Vonderhaar assigned a GAF score of 64 in June 2013; Tr. 689- Dr. Murthy assigned a GAF score of 55 in June 2014). (Tr. 25-26). Plaintiff suggests that the ALJ did not properly rely on the GAF scores to find that Dr. Murthy's opinion was inconsistent with the medical opinion evidence because the Commissioner has

15

declined to endorse use of the GAF scale in the disability evaluation process. (Doc. 9 at 10-11). However, the Sixth Circuit has taken a "case-by-case approach to the value of GAF scores," and the ALJ may consider GAF scores as one factor in assessing a claimant's mental functioning. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836 (6th Cir. 2016).[6] The ALJ nonetheless was free to take the scores into consideration and could reasonably find that the "minimal" level of functioning assessed by Dr. Murthy was inconsistent with GAF scores consistently showing no more than mild to moderate limitations. (Tr. 25).

For these reasons, the ALJ's decision to give Dr. Murthy's opinion less than "controlling weight" and "little weight" finds substantial support in the record. The ALJ reasonably determined that Dr. Murthy's opinion was not supported by his own objective findings and was inconsistent with the other evidence in the case record. The ALJ gave "good reasons" for the weight he assigned the treating psychiatrist's opinion under 20 C.F.R. § 416.927(c). Plaintiff's first assignment of error should be overruled.

### 2. The ALJ's credibility finding

Plaintiff alleges the ALJ erred in assessing her credibility. (Doc. 9 at 13-16; Doc. 14 at 8-10). Plaintiff alleges the ALJ abused his discretion or otherwise acted improperly by finding her to be less than fully credible based on several factors that have no bearing on her credibility.

Title 20 C.F.R. § 416.929 and SSR 96-7p, 1996 WL 374186 (July 2, 1996)[7] describe a two-part process for assessing the credibility of an individual's statements about symptoms,

---

[6] GAF scores were eliminated in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-V"), which was published in 2013; however, the Sixth Circuit has found that GAF scores still may assist an ALJ in assessing a claimant's mental RFC. *Miller*, 811 F.3d at 835.
[7] Effective March 28, 2016, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of

including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c), SSR 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

Upon review of the ALJ's complete credibility determination, the Court finds that the ALJ's credibility finding is substantially supported by the evidence. The ALJ cited numerous reasons for finding that plaintiff's subjective allegations and complaints were not fully credible: (1) plaintiff's "relatively poor work history" prior to the alleged disability onset date and the fact that she had not earned wages at a substantial gainful activity level since 1992, which raised a question as to whether her continuing unemployment was actually due to her medical

---

symptoms." *See* 2016 WL 1237954 (clarifying effective date of SSR 16-3p). There is no indication in the text of SSR 16-3p that the SSA intended to apply SSR 16-3p retroactively, and the Ruling therefore does not apply here. *Accord Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

impairments (Tr. 150-51); (2) plaintiff's financial circumstances, which created additional incentives for her to seek disability benefits (Tr. 217, 334, 349); (3) discrepancies between plaintiff's testimony and other evidence as to whether she had ever used illegal drugs (Tr. 426; Hearing testimony); (4) discrepancies between plaintiff's allegations of her impairments and mental status findings, which demonstrated primarily normal functioning (Tr. 743- 4/3/12, normal affect noted; Tr. 738- 10/22/13, normal affect noted; Tr. 730- 11/25/13, normal affect noted; Tr. 725- 1/27/14, normal affect noted; Tr. 342- 3/13 LifePoint Solutions mental status examination findings of depressed mood, fair judgment/insight, and racing thoughts but with no delusions or other abnormal thought content, logical thought process, full affect, cooperative behavior, and no cognitive impairment; Tr. 427, 428-29- 6/13 mental status examination findings in Dr. Vonderhaar's report disclosed that plaintiff was oriented to person, place, time and situation, she did not demonstrate "any gross mental confusion," and there were no signs of any impulsivity of behavior or thought, any formal thought disorder, or any personality disorder or psychotic manifestations; (5) plaintiff's inconsistent testimony about the number of times she left the house; (6) lack of corroboration in the record for plaintiff's allegations of substantial difficulties associating with people and going out in public (Tr. 428, 429, 215, 216, 767, 426); (7) consistently normal physical examination findings and treatment notes reflecting that plaintiff's self-cutting behavior was not indicative of a suicide attempt (Tr. 334, 349, 343, 347); (8) plaintiff's sporadic mental health treatment history; and (9) plaintiff's lack of full compliance with her diabetes treatment. (Tr. 20-22). The ALJ thoroughly reviewed the evidence of record and explained why he discounted plaintiff's credibility for these reasons.

18

Plaintiff challenges the ALJ's credibility finding on several grounds. Plaintiff alleges that the ALJ abused his discretion by discounting her credibility because she received "sporadic treatment" for mental health problems without first considering any explanations for the failure to pursue treatment. (Doc. 9 at 14). However, plaintiff does not proffer an explanation for her failure to pursue treatment in the Statement of Errors or point to any evidence in the record that explains the sporadic treatment. The level of treatment is a relevant factor for an ALJ to consider in assessing an individual's credibility. *See* SSR 96-7p, 1996 WL 374186 ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). The ALJ committed no error in this regard.

Plaintiff also argues it was an "abuse of discretion" for the ALJ to rely on her work history to discount her credibility. (Doc. 9 at 13). Plaintiff alleges this factor should not have reflected negatively on her credibility because she testified she was home raising her children from 2003 to 2012, which explains her lack of earnings and should not be construed as a "character flaw." (*Id.*). Plaintiff's argument is based on a faulty factual premise. In discounting plaintiff's credibility on this basis, the ALJ looked at plaintiff's "relatively poor work history prior to the alleged disability onset date" and her earnings "prior to the alleged onset date," starting in 1992. (Tr. 20). This time period predates the years during which plaintiff alleges she was raising her children (2003 through 2012). (*See* Doc. 9 at 13). The ALJ was entitled to consider plaintiff's work record for the years predating her alleged disability when evaluating her credibility. *See* 20 C.F.R. § 416.929(c)(3) ("We will consider . . . information about your prior

work record"). Plaintiff has not shown that the ALJ erred by discounting her credibility on this basis. *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 807 (6th Cir. 2008) (holding that "it squarely is *not* the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.") (emphasis in the original).

Plaintiff also alleges that it was "highly questionable" for the ALJ to discount her testimony based on her inconsistent testimony about her illegal drug use. (Doc. 9 at 14). However, plaintiff has not provided any legal or factual support for this argument. Plaintiff does not deny that there were discrepancies between her testimony on this point and other evidence in the record. It was within the ALJ's discretion to discount plaintiff's credibility on this basis. *See Vance*, 260 F. App'x at 807.

Finally, plaintiff argues that it was improper for the ALJ to draw negative inferences about her credibility based on her financial situation. The ALJ did not explain why plaintiff's dire financial circumstances called her credibility into question. The Court agrees with plaintiff that it was not reasonable for the ALJ to infer that because plaintiff's financial circumstances were poor or deteriorating, she had an improper motive for seeking disability benefits. Nonetheless, because the ALJ gave numerous other valid reasons for finding plaintiff was not entirely credible, and because those reasons are substantially supported by the record, the ALJ's credibility finding is entitled to deference and should not be disturbed.

Plaintiff's second assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this case be **CLOSED** on the

docket of the Court.

Date: ___1/29/2018___

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

AMANDA S. DOUGMAN,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:16-cv-1033

Dlott, J.

Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).